Good morning or good afternoon. I guess it still is morning. We're used to doing these in the afternoon. Is everybody here? Can you tell from your screens, gentlemen, if everybody is here? Yes, Your Honor. Thomas Griffin for the appellants. Okay. Sometimes they're associates that watch or whatever. All right. So, gentlemen, you are in the first district of the, in the first division of the Illinois Appellate Court. I'm Justice today. I'll be presiding because our normal presiding justice, Justice James Fitzgerald Smith, our colleague, is having technical issues. So, he's going to listen to this oral argument and it's, and he'll be able to catch up with us if he can connect his Wi-Fi. So, he might pop in or we're not really sure. Also joining us today is my other colleague, Justice Mary Ellen Coughlin. We're delighted to see both of you and we'll tell you right off the bat, we've read the briefs, we've read the cases, and we've read the record. So, what we suggest is that you each take 10 minutes to start and start with your most important attention-grabbing points and work your way down from there. We will not try not to bother you during that 10 minutes. You can just go for it. And then if we have questions, we'll ask at that point. And we ask that the appellate reserve some time for rebuttal as we've got cross-appellate. So, that's going to be a little complicated, but we'll make sure everybody gets a chance to say their say. So, we are hearing case number 122-1953 and case 123-0062, which are consolidated. That would be Stuart Pinkert versus Boardwalk Birch Companies LLC, Series P, Arthur Homer and Stuart Pinkert and the Stuart Pinkert Children's Trust versus Wall Street Equities LLC. So, we will ask the appellant. Okay, we're going to start with Boardwalk Birch Companies, which is the defendant appellant in the first case. And because I said 10 minutes, we'll give you five minutes for that case. And then we're going to let the appellant, which is Wall Street Equities in the second case, continue on that case. Is that clear? And then we'll move to the appellate. Is that okay with everybody? That works for me, Your Honor, if that's the way you want to do it. There is a substantial amount of interrelationship. So, I would be happy to address it all. And I don't think I even have 10 minutes. There's just a few central points that I want to emphasize. Okay, great. So, let's just try that and see if it works. Yes, Your Honor. Good morning, Your Honors. My name is Thomas Griffin. I represent the appellants in both of the Consolidated Appeals, Boardwalk Birch Companies, LLC, Series P, and Arthur Homer in the 1953 action, which is the underlying 11-514 action in the trial court, as well as the underlying 730 trial court action. If we're addressing the Boardwalk Birch, Arthur Homer case first, the issues I want to hit on that, to emphasize with the court, I believe our briefs fairly address the legal arguments and the explanations as to why the defendant appellants contend the trial court erred in its ruling, the sole basis for its grant of summary judgment on the contract counterclaims brought by Mr. Homer and Boardwalk Birch, and the contract-based set-off claims brought by those two defendants, was that they are not third-party beneficiaries under the contract. With respect to Boardwalk Birch, the trial court made a factual determination based on a one-line argument in the plaintiff's briefs that Boardwalk Birch did not exist at the time of the underlying contract between Adam Pinker and Wall Street Equities. That's one of the two underlying contracts that are the premise of the counterclaims, and didn't make any findings as to Arthur Homer or any factual justification as to why Arthur Homer was not a third-party beneficiary. The determination that Boardwalk Birch was not in existence at the time the underlying contracts was entered into was simply a mistake of fact. As we pointed out to the trial court in the motion to reconsider, the trial court relied upon a certificate of registration that was filed by in Illinois to register to do business in Illinois. It's uncontested that Boardwalk Birch is a Delaware limited liability company. It was formed under the laws of Delaware. That's what's alleged in the complaint and admitted in the answer. So a certificate of registration, I'm sorry, your honor, you wanted to address the fact that I just want to pass the hat to our presiding justice, Justice James Fitzgerald Smith, who has just joined us. We're in the middle of Mr. Griffin's first 10 minutes of argument about his clients, Boardwalk Farmer and Wall Farmer. So I was addressing the fact that Boardwalk Birch was in fact in existence at the time, both of the underlying contracts that underlie the counterclaims and the setoff claims brought by Boardwalk Birch and Arthur Homer in the 11-514 case. It was in existence the evidentiary basis that the court relied upon a certificate of registration in Illinois was not an adequate basis to find that it didn't exist. It's a Delaware corporation. Registration in Illinois doesn't go to its existence. It just goes to when it was registered to do business in Illinois. We pointed that out to the court in our motion to reconsider, to the trial court in persuaded and didn't reverse his ruling on that ground. We also pointed out to the trial court that it doesn't matter whether even though it was an incorrect factual determination by the trial court that Boardwalk Birch did not exist in 2014 and 2015 when those two underlying contracts were entered into. We pointed out to the court that the case law is clear that if you're identified by class, it doesn't matter whether you actually existed at the time the underlying contract was entered into. It just matters that you are a member of the class that is identified as a third party beneficiary at the time of the breach and enforcement of the contract. And there's no Didn't the circuit court judge indicate though that you only raised this in your reply? Yes, your honor. The circuit court addressed the fact that we raised in the reply that the circuit court said it was waived because it was only raised in the reply, your honor. But that was the first time the issue of whether or not it mattered if you're identified by class, whether you existed at the time of the the court had never considered and never made a determination that Boardwalk Birch did not exist at the time of the breach. He just said that the Boardwalk Birch erroneously did not exist at the time the underlying contracts were entered into. There was no finding and never been a finding that the entity did not exist at the time of the breach and the enforcement. The issue had never come before the court until the court said, yeah, you can't bring this because you didn't exist at the time the underlying contract was entered into. That triggered the analysis for the first time that it's not a question of whether you existed if you're identified by class when the underlying contract was entered into. It's a question of whether or not the entity existed and had a right to enforce the agreement at the time of the breach and at the time of the enforcement. That was the first time the issue came up and as the parties have noted in their appellate briefs, this is a de novo issue for this court to consider. Mr. Griffin, even if you are correct, what facts are there that that your client was an intended beneficiary other than the fact that he's in the release? Your Honor, that is what we're relying upon is the identification of the classes, of the intended beneficiaries in the release. That brings me to my second point on the primary point that I wanted to address. I think I've touched on the fact that there's no finding whatsoever as to Mr. Homer and why Mr. Homer in the trial courts do you was not an intended third-party beneficiary. It's alleged in the pleadings that they're an intended third-party beneficiary that they fall within the class of intended third-party beneficiaries specifically identified in the contract, which includes members, owners, agents, servants, representatives. As pointed out, the contract itself, the underlying contract itself was signed by Mr. Homer as a representative of Well Street Equities. It was clear and a within these classes and the fact that Boardwalk Birch was in the classes, the court has to recall that the sole reason why Mr. Homer and Boardwalk Birch got sued in the underlying AFG Lakeshore case was by virtue of their membership interests in these classes. They got sued not because they were parties to any contracts with Lakeshore or AFG. They got sued because they were members, managers, representatives, and agents of Well Street Equities and Sheffield. That's why they got sued. Those are the classes that they fall within the agreement. The logical outcome of the court's ruling, I know there's a suggestion that they're only referenced in the release, but that makes them third-party beneficiaries of the agreement. The trial court held that they weren't third-party beneficiaries in any way, shape, or form with respect to the underlying Stewart-Birch agreement. He said they are just not intended third-party beneficiaries. The logical outcome of that ruling would be that Mr. Pinkert could sue them despite the release, despite their specific identification as members of these classes within the release. He could sue them for violations of agreements, for misconduct in connection with both Well Street Equities and the Sheffield transaction and say, hey, I'm not contractually prohibited from doing that because they're not parties to this contract. He wouldn't be precluded by either the release provision or the covenant not to sue or not to induce others to sue because they're not parties to the agreement. The whole concept behind third-party beneficiary theory is we don't allow that. It is a judicial construct for efficiency. Otherwise, what would have to happen is Well Street Equities would have to get sued by Mr. Homer and by Boardwalk-Birch to enforce their indemnity rights as against Well Street Equities. Then Well Street Equities would have to turn around and sue Mr. Pinkert for violating the agreement. I'm not going to sue them. I'm not going to induce others to sue them. The concept behind third-party beneficiary theory is we don't make third-party beneficiaries do that as long as they're adequately identified. You're going to have to move on if you've got other issues. I don't know how many more points because I came in in the middle of this, but it looks like you've been going for 10 or 15 minutes. Those are the points I had, with respect to the Boardwalk-Birch case. All right, then I guess we should let Mr. Scott speak. Yes, Scott Schaffers on behalf of Stuart Pinkert, the plaintiff, aptly. May it please the court and counsel. Judge, I first want to address waiver. Waiver is not just a gotcha thing under the law. It serves a very real and legitimate purpose of substantial and timely justice. If you didn't apply waiver to 90 percent of the arguments, 95 percent of the arguments that the defendants made in their briefs and in the motions you reconsider, then a party like defendant who never wants to go to trial, but nevertheless is facing summary judgment, they can get a two or three-year extension of the trial date by saving their winning arguments until post-judgment or on appeal. So, waiver should be strictly applied in this case. Here are the arguments that they waived. They waived other than identifying, other than Homer and Boardwalk being described in the releases. They waived every other argument. One, that they are representatives under the successors of the signs provision, that the Boardwalk was in fact in existence in Delaware. I specifically pointed out in my summary judgment brief that it was not in existence. It did not register in Illinois until the end of December, well after the time the performance was due. And they were silent about that. And so, they waived any issue as to the existence, even if they hadn't. The Crawford case, which says that, well, so long as a party, a non-existing entity, comes into existence by the time performance was due, it can be an intended third-party beneficiary. But it was not yet in existence, at least in Illinois, when my clients were alleged to have breached the purchase agreements, or induced a breach of the purchase agreements. And as I pointed out in my briefs, if it was not in existence under Illinois law, then it could not be an intended beneficiary of the purchase agreements because those agreements required suit in Illinois. And the LLC Act says, no unregistered foreign limited liability company can file suit in Illinois. And so, but as I said in my brief, there was a lot of issues and arguments that they waived. As far as getting to the merits, if the court were even to get to the merits, as far as the releases under 4B, I use this term consistent with the quorum. It's an absurd argument. And I say absurd not to breach the quorum, but because it's a term of art in contract law. It's an absurd argument to say that any released party under a broad and general release has blanket intended beneficiary status under any of the provisions of the agreement. That's just, frankly, that is an absurd argument. If that were the case, then any of my clients' related released parties would have direct standing to sue Mr. Holm, or Mr., I'm sorry, to sue Wellstreet Equities. My client's spouse, my client's heirs, my client's partners, they could sue Wellstreet Equities to enforce any obligation under the purchase agreements. I think courts are required to avoid absurd constructions, unreasonable constructions, etc. So, as far as the defendants made a significant point that the intended third party beneficiaries do not have to be identified throughout the contract. Well, the cases that I cited, there's the Willis case, the estate of Willis case, there's the Harleyville case, there's the Berry versus the hospital case, even the Wilfong case, that defendants cited in their briefs, each of those decisions looked at the specific provisions that the plaintiffs sought to enforce as intended third party beneficiaries. And even if the plaintiffs in those cases were identified as having some incidental benefit under the agreement, even if they were expressly identified in some of the provisions as having a direct benefit, for example, the general contractor in the Willis case was to be an additional insured under the insurance provisions, even though there's an incidental benefit to the plaintiff, even if there's a direct benefit under some of the provisions, the provisions that they're suing under, they must be identified as having an intentional and direct benefit. If Mr. Homer and Boardwalk wanted to be beneficiaries of the confidentiality and the non-inducement provisions, they could have easily included themselves in those provisions. And the fact that they chose not to is direct, clear, plain evidence that no non-party to the agreement had any direct rights. And we have to go no farther than sections 8F and 8K of each purchase agreement. 8F says no party shall transfer any rights or responsibilities to any other party. 8K says no party shall transfer any claims under this agreement to any third party. Those are, to step to the side for a minute, the cases say that there must be an affirmative statement in the language of the contract, which confers a direct benefit on a putative or a claimed intended beneficiary. Those provisions, 8F and 8K, those are negative statements that no non-party has any rights not specified under the agreements. So, because we're taking it in parts, for those reasons and the others, I think the judgment in 11514 should certainly be affirmed. All right, Mr. Griffin. Do you want me to address the arguments Mr. Schaffer's just made or move on to the... You got to do whatever you're going to do to close out. I just mentioned first, with respect to Mr. Schaffer's arguments, the non-transfer provisions have no relevance to third party beneficiary. This is not a transfer or assignment. Third party beneficiaries are not required to demonstrate, hey, I have an assignment or a transfer of rights. Third party beneficiaries step in the shoes of the party that intended to benefit them under the agreement. That's what's happening here. The confidentiality and non-inducement provisions are integrally related to the release provisions. They go hand in hand. They are logically connected and to say that there's no case law that says, hey, you have to be identified in every single provision if you're a third party beneficiary that you're seeking to enforce, that's what Mr. Schaffer's is trying to argue. With respect to the other case, the Wall Street equities case, the judge's sole ruling was that the American rule bars Wall Street equities from collecting as a breach of contract damages legal fees incurred by Wall Street equities in a third party action with AFG and Lakeshore as a consequence of Mr. Pinkert's breach of his disclosure, non-disclosure of confidential information. That is an inappropriate application of the American rule. The American rule under Sorensen and its progeny is very clear, does not apply to bar recovery of those types of fees incurred in connection with litigation with third parties that was a natural and foreseeable consequence of a breach of contract. There is no more natural and foreseeable consequence of a violation of a non-inducement provision than the third party actually filing suit when you induce them sharing confidential information with them to file suit. It is the natural and foreseeable consequence. Sorensen and its progeny is very clear that the American rule does not apply to bar recovery of those types of damages in this type of case. Using the same word that Mr. Schaffer used, the absurdity of the application of the American rule in this case is demonstrated by the fact that there is in fact a fee shifting provision in the contract at issue. The contract at issue provides that any prevailing party shall be entitled to recover from the non-prevailing parties any and all liability for losses, liabilities, claims, damages, costs, expenses, including costs of investigation and defense and reasonable attorney's fees and obligations incurred in any action or proceeding relating to the agreement. The AFG and Lakeshore litigation against Wall Street Equities was any action relating to disagreement. That action, as alleged, was a consequence of Mr. Schaffer's clients, Mr. Pinkert's violation of his confidentiality undertakings and his non-inducement undertakings. So the trial court's ruling on those issues is simply erroneous. Justices, do you have any questions? I have none. Okay, well, Scott, since he, since Thomas went into the one little area I thought that we had already discussed, I'll let you briefly say anything you want on the American rule. I don't think it applies. You don't think the American rule applies to bar their claim? Basically. I'm sorry, I don't mean to ask you questions. I know I'm the advocate, you're the justice, but I'm sorry. Yeah, I'm not sure what I think. I just don't think, I think that the entity is entitled to collect a fee. Well, Justice Smith, I would say that under the cases, so long as the defendant in the first action, Boardwalk, Homer and Wall Street Equities here, if they were sued for their admitted criminal mismanagement, then I think the policy considerations as stated in the Diamond case, the Kearns case, some of the other cases that we've cited, that so long as they're sued for their own liability, they should be barred from recovering those fees in the second case. But aside from that, they did not, Boardwalk, Homer and Wall Street Equities did not even succeed in the AFG or Lakeshore litigation. They were sued, the Sheffield entity was put into bankruptcy, there was a bankruptcy settlement agreement approved by the bankruptcy court, under which his clients, the Homer parties released all their claims, didn't get anything from the Sheffield entity. And at the end of the bankruptcy case, AFG and Lakeshore received nearly their entire investments. And on that basement, the party settled and walked away. So there was no success by Mr. Griffin's clients. But so, Justice Smith, if you don't mind my addressing another issue with respect to the 13730 case. Yeah, unfortunately, as I say, I came in the middle of this, so I didn't see what you initially had argued. So I'm giving you a little leeway, but we got to wrap this up. Sure, sure. We have another case after this. Understood. Okay. As I said in my appellate brief, if I win on the intended beneficiary issue, under 11514, then I automatically win on in the 13730 case, under Ray Stutakata and the rule against claim splitting. For whatever reason, Mr. Griffin objected to the consolidation of the cases, but then asserted the same facts in each set of affirmative defenses and counterclaims. Because BoardWalk and Homer lost on those issues, and if I win on those issues on appeal, BoardWalk and Homer's issues, then Mr. Griffin, then Wall Street Equities, the privity, the undisputed privity of BoardWalk and Homer cannot maintain a second action, cannot split the case into 13730. And I'll say in the American Freedom case, even absent parties from the first case, so long as they're in privity with the present parties in the first case, they cannot raise the same facts, regardless of the theories of relief, they cannot raise the same facts in the second case. Okay. And so for those and the other reasons cited in my briefs, I ask that you affirm both judgments. Thank you, Ron. Any questions? All right. Thank you both. Your briefs are very nice. Unfortunately, as I say, this was kind of broken up because my computer broke down. So I hope you each had your opportunity to say what you wanted. So thank you very much, and we'll let you know if there's any questions. Uh, Justices Coghlan and Puczynski, it seems that Justice Smith has frozen for me. I don't know if he's frozen for you. Yes, it does appear to be the case. Okay. I think we got through just the end of what he was saying, though. Yes, I'm pretty sure he was saying thanks for your wonderful briefs. Thanks for a great oral argument. We have appreciated all of the work that you put into this and that we will issue an opinion on order forthwith and that this court is adjourned. Thank you. Thank you. Thank you.